UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
    ARTHUR K. DAVIS ) Case No. 08-13693-SSM
    TERESA M. DAVIS ) Chapter 13
)
        Debtors )

**MEMORANDUM OPINION**

Before the court are objections by Gerald M. O'Donnell, the standing chapter 13 trustee,[1] and by eCAST Settlement Corporation as agent for FIA Card Services[2] to confirmation of the debtors' repayment plan. The debtors have conceded the trustee's objection, which asserts a failure to pay projected disposable income into the plan, but vigorously contest the creditor's objection that the plan was not proposed in good faith because the debtors would be keeping a "luxury" house and two "luxury" cars at the expense of their unsecured creditors, who are projected to be paid only 12 cents on the dollar.[3] Following a hearing on September 24, 2008, the court took the matter under advisement. For the reasons stated, confirmation will be denied.

---

[1] Subsequent to the confirmation hearing, Mr. O'Donnell retired after many years of distinguished service, and Thomas P. Gorman has been appointed as the successor chapter 13 trustee.

[2] FIA Card Services has filed a proof of claim against debtor Teresa M. Davis in the amount of $37,552.45.

[3] Because the debtors represent that any modified plan they would file would include their retention of the home and the automobiles, the court agrees with the debtors that the creditor's objection is not moot simply because the debtors have conceded the trustee's disposable income objection.

Background

Arthur K. Davis and Teresa M. Davis are husband and wife. They filed a voluntary petition in this court on June 26, 2008, for adjustment of their debts under chapter 13 of the Bankruptcy Code. On their schedules, they report gross monthly income of $17,224, net monthly income of $13,584, and expenses of $10,197 per month. The expenses include a $5,574 per month mortgage payment on their house and $1,421 per month for payments on two cars.

Their plan, filed on July 22, 2008, proposes to pay the chapter 13 trustee $3,388 per month for 60 months. The bulk of the funds paid into the plan would be applied to pay priority tax debts in the estimated amount of $143,000 and mortgage arrears in the estimated amount of $33,000.[4] The remaining funds—approximately $8,000 after payment of administrative expenses—would be applied pro rata to unsecured claims, with the projected distribution being 12 cents on the dollar. The car loans would be paid directly by the debtors.

The debtors' home, located in Haymarket area of Prince William County, Virginia, is a 5,705 square-foot, 4-bedroom, 4 1/2-bath, single family house on 10 acres with an in-ground swimming pool. The monthly mortgage payment was just increased to $5,768 per month. The debtors purchased the home in 2004 for $863,034 and refinanced it a year or two later, taking cash out in an effort (ultimately unsuccessful) to prop up Mr. Davis's business. The current payoff on the mortgage is approximately $799,000, and the tax assessed value of the property is $828,100, although Mr. Davis testified that he believed the property was worth closer to $704,000 (the value shown on the schedules) in the current depressed real estate market. The debtors have

---

[4] The filed proofs of claim with respect to the priority tax debt and mortgage arrears are $135,339.29 and $38,899.68, respectively.

two automobiles, a 2006 Volvo XC90, and a 2005 Volvo, both purchased new, on which the monthly payments total $1,421.  They commute together to work approximately 24 miles each way, and they have a 19-year old son living at home with them.

Discussion

A.

The purpose of chapter 13 is to enable financially-strapped debtors to restructure their debts and repay their creditors under court protection and court supervision.  Although secured claims and priority claims must be paid in full, unsecured claims may be compromised so long as the case was filed in good faith, the plan was proposed in good faith, the creditors receive at least as much as they would in a chapter 7 liquidation, and the debtors pay their projected disposable income into the plan for the applicable commitment period, which is either 36 or 60 months, depending on their income.  §§ 1325(a)(3), (a)(4), (a)(7), and (b)(1), Bankruptcy Code.

eCAST's objection focuses on the requirement that the plan be filed in good faith. § 1325(a)(3), Bankruptcy Code.  In this connection, the Fourth Circuit has held that there is no requirement of "substantial" payment in a chapter 13 case and has instructed that bankruptcy courts should apply a totality of the circumstances test to assess good faith when a debtor proposes no or only minimal payment of unsecured claims.  *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982).  Among the non-exclusive factors to be considered are:

> [T]he percentage of proposed repayment, . . . the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*Id.* at 972.  A subsequent opinion held that an attempt to discharge a debt that would be nondischargeable in chapter 7 was also a relevant consideration.  *Neufeld v. Freeman*, 794 F2d 149 (4th Cir 1986).  *See In re Oliver*, 186 BR 403 (Bankr. E.D. Va. 1995) (holding that chapter 13 plan was filed in bad faith where 80% of the debt was held nondischargeable in prior chapter 7; plan would pay only 17% dividend on claims; and chapter 13 was filed solely as response to creditor's efforts to enforce its nondischargeable judgment).

B.

Whether a debtor's proposed retention of an expensive house in chapter 13 to the detriment of his or her unsecured creditors constitutes bad faith appears to be an issue of first impression in this district.  There is no doubt that the issue requires some delicate weighing of competing concerns.  The policy of this nation has long favored and promoted home ownership, and historically a major motivation for seeking chapter 13 relief has been to save the family home.  At the same time, debtors are expected to make reasonable efforts to cut unnecessary expenses in order to pay creditors to the best of their ability.  As another judge of this court has aptly stated,

> Debtors do not have an entitlement, at the expense of their creditors, to maintain their prepetition lifestyle and status in society, especially when their prior lifestyles "were characterized by luxury, excessive consumption of nonessentials, or inordinately high expenditures for purchases of necessities."

*In re Daniel*, 260 B.R. 763, 769 (Bankr. E.D. Va. 2001) (citation omitted).

A number of courts in other districts have found a chapter 13 debtor's proposed retention of unnecessary or overly-expensive property to constitute bad faith justifying denial of

confirmation.[5] In *In re Leone*, 292 B.R. 243 (Bankr. W.D. Pa. 2003), for example, the debtor's plan was found lacking in good faith when it provided for payment of $18,957 in mortgage arrears and $6,793 in delinquent real estate taxes in order to cure defaults on a $205,796 mortgage secured by a house worth no more than $138,380, while paying a dividend to unsecured creditors of only 11%. Similarly, the district court in *In re Rice*, 72 B.R. 311 (D. Del. 1987) upheld a bankruptcy court's denial of confirmation of a chapter 13 plan based on lack of good faith when the plan proposed full payment of the mortgage on a newly-purchased $100,000 home while paying unsecured creditors only 13 cents on the dollar. The district court noted that the debtors' "plunge into bankruptcy" was precipitated by what the court characterized as the "imprudent purchase" of the home, which increased their household expenses from $650-$700 per month to over $1,100 per month.

Confirmation has also been denied on good-faith grounds in cases which, while they did not involve houses, provided for other payments that the court found unfair in light of the minimal distribution being made on unsecured claims. In *In re McNeely*, 366 B.R. 542 (Bankr.

---

[5] Some courts have alternatively held that an overly-expensive house was not a "necessary" expense that could be included in the disposable-income analysis. *See In re Loper*, 367 B.R. 660 (Bankr. D. Colo. 2007) (holding that house in which debtors had little or no equity but on which debtors were spending $5,690 per month (approximately two-thirds of their monthly net income) was not necessary in a case in which unsecured creditors were receiving only 10%). However, because the debtors' income in this case exceeds the statewide median for a family of the same size, their projected disposable income is not determined by the traditional balancing of income against court-determined appropriate expenses but rather by the so-called "means test" established by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. §§ 1325(b)(3) and 707(b)(2), Bankruptcy Code. The means test allows deduction of on-going payments for secured debt without specific regard to whether retention of the collateral is necessary, although it does limit the deduction for amounts necessary to cure *defaults* on secured debts to "the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts." § 707(b)(2)(A)(iii)(II), Bankruptcy Code.

N.D. W.Va. 2007), for example, confirmation of a chapter 13 plan was denied on good faith grounds when it would have paid unsecured creditors 7.5% of their claims while the debtors retained a houseboat on which they would be making some $19,750 in payments over the life of the plan. And in *In re Daniel*, 260 B.R. 763 (Bankr. E.D. Va. 2001), confirmation of a plan that would have paid unsecured creditors 12 cents on the dollar was denied on both good-faith and disposable-income grounds when the debtor's monthly budget included a vacation time share, private school tuition for her 11-year old son, and country club dues for the debtor and her husband. eCAST has also called the court's attention to an unpublished decision, *In re Michael A. Reid and Lisa W. Reid*, No. 06-57080 (Bankr. S.D. Ohio 2007), in which a chapter 13 plan was denied confirmation on good faith grounds when the debtors would be paying $3,225 per month to retain a house which the court characterized "as rising to the level of a lavish lifestyle" while paying unsecured creditors a dividend of only 3%. *Id.* at 3-4.

C.

The debtors do not dispute that $5,768 per month is a large mortgage payment, and there can be little that it substantially exceeds the probable rent the debtors would have to pay if they moved out of the property. Even if the debtors had to pay $4,500 per month in rent, the amount freed up by not having to pay the mortgage would enable full, or nearly full, payment of general unsecured claims over the 60-month plan period. Other than the fact that the house is the roof over their heads and they may have a sentimental attachment to it, it is not clear why the unsecured creditors should subsidize retention of a house in which they have no equity.[6] At the

---

[6] Indeed, if the debtors' scheduled value of the property is correct, they are considerably upside-down. And even if the somewhat higher tax-assessed value is used, there is no equity after

(continued...)

same time, it is far from clear that the debtors could actually sell the property in the present depressed real estate market for a sufficient price to pay off the mortgage, meaning that a sale might be possible only if the mortgage company agreed to a "short sale" in which it accepted less than the amount owed. If the debtors simply surrendered the property and allowed it to go to foreclosure, there is always the risk of a significant deficiency claim which would dilute the distribution to unsecured creditors.

There a number of factors that weigh against a finding of bad faith. The debtors' current financial problems appear to stem from the failure of Mr. Davis's business, not because they lived beyond their means. Given their combined annual gross income of $206,688, a mortgage in the range of $800,000 would not necessarily be thought of as fiscally irresponsible. Even with the recent increase to $5,768 per month, the mortgage payment represents 32% of the debtors' combined gross monthly income, which is consistent with the traditional wisdom that one's mortgage payment should not exceed one-third of gross income. Put another way, the debtors did not get into financial trouble by buying too expensive a house, and although the mortgage payment is large, it is not grossly disproportionate to their income. Finally, there is no suggestion that the debtors have not been honest in representing their financial circumstances, or that any of the debts that would be compromised would be non-dischargeable in chapter 7.[7]

---

[6](...continued)
taking into account the probable costs of sale such as real estate commission, grantor's tax, and other settlement costs traditionally paid by the seller.

[7] As a result of the amendments made by BAPCPA, this factor will no longer be as significant as it was when *Neufeld v. Freeman* was decided in 1986. Then a chapter 13 discharge—sometimes referred to as a "super discharge"—was much broader than a chapter 7 discharge and extended, for example, to debts incurred through fraud, larceny, and willful and malicious injury. Now,
(continued...)

7

Additionally, it is arguably something of a narrow view to characterize the plan as simply a means of holding on to a nice house while paying unsecured creditors only $8,000 over the 60-month term of the plan. The plan does after all provide for payment of over $135,000 on account of *priority* unsecured claims. While one of the oft-stated goals of American bankruptcy law is equality of distribution, Congress has decided that the claims of some creditors are more worthy of payment than others. This includes certain tax debts. § 507(a)(8), Bankruptcy Code. While they may be entitled to priority over eCAST's claim, they are nevertheless unsecured claims, and the relatively small distribution eCAST would receive under the debtors' plan as currently proposed is as much a result of Congressional policy favoring tax debt over credit card debt as it is of the debtors attempting to keep their house.

Be that as it may, at the end of the day the court is left with the definite conviction that the debtors' plan is more focused on preserving a comfortable lifestyle than on repaying their creditors to the best of their ability. Regardless of whether a $800,000 house would be fairly characterized as a "luxury" dwelling in the Northern Virginia market, there can be no doubt that at 5,705 square feet on a 10-acre lot with an in-ground swimming pool, it is definitely upscale. To retain the home—which they themselves characterize as having no equity— they would be paying not only the on-going payments of $5,768 per month, but an additional $648 per month to cure the arrears, for a total of $6,416 per month. This far exceeds what the debtors would likely incur to rent a comfortable house in reasonable proximity to their place of work. Of course, it is true that the debtors would also incur moving expenses, but even so, the reduction in housing

---

[7](...continued)
however, a chapter 13 discharge is only marginally broader than a chapter 7 discharge.
§ 1328(a), Bankruptcy Code.

costs would allow a significant increase in the distribution on general unsecured claims. Having considered all the circumstances, the court is constrained to agree with eCAST that the plan, as currently drafted, is not proposed in good faith. This is not to say that a modified plan would necessarily have to provide for immediate surrender of the property and 100 percent payment of unsecured claims. Given the current depressed state of the real estate market, a plan might, for example, provide some reasonable period to market the property, with a step-up in plan payments after the property is sold and moving expenses paid. But it will be soon enough to consider what is reasonable when a modified plan is actually proposed, and the court expresses no view with respect to any possible modification.

A separate order will be entered denying confirmation, with leave to file a modified plan in 20 days.

Date: _____   _____
                                 Stephen S. Mitchell
Alexandria, Virginia             United States Bankruptcy Judge

Copies to:

Arthur K. Davis
Teresa M. Davis
2825 Camptown Ct.
Haymarket, VA 20169
Debtors

John D. Sawyer, Esquire
Sawyer & Azarcon
10605 Judicial Dr., B-2
Fairfax, VA 22030
Counsel for the debtors

Kevin M. Fitzpatrick, Esquire
Kevin M. Fitzpatrick, P.C.
10615 Judicial Drive, Suite 603
Fairfax, VA 22030
Counsel for eCAST Settlement Corporation

Thomas P. Gorman, Esquire
211 North Union Street, Suite 240
Alexandria, VA 22314
Chapter 13 trustee